CULLEN & DYKMAN LLP
100 Quentin Roosevelt Boulevard
Garden City, NY11530
(516) 357-3700
C. Nathan Dee, Esq.
Matthew G. Roseman, Esq.
Bonnie L. Pollack, Esq.

Proposed Counsel for Trocom Construction Corp.

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK

```
-----------------------------------------------------------------x
                                          :
In re:                                    :   Chapter 11
                                          :
TROCOM CONSTRUCTION CORP.,                :   Case No.
                                          :
                                          :
                    Debtor.               :
                                          :
-----------------------------------------------------------------x
```

### AFFIDAVIT OF JOSEPH TROVATO
### PURSUANT TO LOCAL BANKRUPTCY RULE 1007-4

```
STATE OF NEW YORK    )
                     )ss:
COUNTY OF QUEENS     )
```

**JOSEPH TROVATO,** being duly sworn, deposes and says:

1.       I am the President, sole director and holder of 100% of the voting shares of

Trocom Construction Corp. (the "Debtor"), debtor and debtor-in-possession herein. In this

capacity, I am familiar with the day-to-day operations and financial affairs of the Debtor.

2.       I submit this affidavit pursuant to Rule 1007-4 of the Local Bankruptcy Rules for

the Eastern District of New York (the "Local Rules") in support of the Debtor's petition for relief

under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") filed on the date

hereof (the "Petition Date"). Except as otherwise indicated, all facts set forth in this affidavit are

based upon personal knowledge, my review of relevant documents, or my opinion based upon experience, knowledge, and information concerning the Debtor's operations. If called upon to testify, I would testify competently to the facts set forth in this Affidavit. I am authorized to submit this Affidavit on behalf of the Debtor.

## I.  INFORMATION REQUIRED BY LOCAL RULE 1007-4

3.      Local Rule 1007-4 requires certain information related to the Debtor, which is set forth below and in the schedules annexed hereto.  Unless otherwise indicated, the financial information contained herein is unaudited.

4.      <u>Local Rule 1007-4(a)(i)</u>: The Debtor is not a small business debtor.

5.      <u>Local Rule 1007-4(a)(ii)</u>: The nature of the Debtor's business and the circumstances leading to the Debtor's filing of this Chapter 11 case are as follows:

The Debtor is a New York corporation initially formed in 1969 by my father Salvatore Trovato, who is now deceased.  Sal originally owned 100% of the shares of the Debtor's stock. The stock of the Debtor is now owned as follows: Class A voting shares- 100% ownership by myself; Class B non-voting shares- my sisters Rosemary and Dawn each hold 20 shares and the Estate of Salvatore Trovato holds 60 shares.

The Debtor is in the heavy construction business.  Its primary customer is the City of New York through its various agencies.  In particular, the Debtor works with the Department of Design and Construction, the Parks Department and the Economic Development Corp., regarding the replacement of water mains, sewers, retaining walls and refurbishment of parks. The Debtor is presently providing services on eighteen (18) ongoing construction projects throughout the New York metropolitan area.  In connection with those projects, the Debtor's total receivables from the City agencies is estimated to amount to $11,339,038 as of December

31, 2014. In addition, the Debtor has filed or will shortly file notices of claim against the City seeking the payment of more than $19 million in connection with certain construction projects. The Debtor has approximately 75 employees, the majority of which are members of various unions, including Local 14, Local 15, Local 29, Local 731, Local 780 and Local 1010.

The Debtor has a line of credit with M&T Bank, which it has drawn down in the amount of $6,277,598 as of December 31, 2014. The credit line is secured by a blanket lien in the Debtor's assets and guaranteed by myself, my mother Antoinette Trovato and two entities owned by the Trovato family and Found Property Resources, Inc. Because of the cash flow issues discussed below, prior to the filing of the Debtor's bankruptcy case, the Debtor received cash infusions from two entities affiliated with the Trovato family, 460 Kingsland Avenue Real Estate LLC ("460") and Reveal Kingsland LLC ("Reveal"). The Debtor executed in favor of both 460 and Reveal a Line of Credit Note, each in the amount of $250,000.00. The Line of Credit Notes with 460 and Reveal are secured by a blanket lien in the Debtor's assets subordinate to M&T Bank.

The Debtor has been experiencing severe cash flow issues primarily because of losses on several projects and the City's failure to timely pay amounts due and owing to the Debtor. The Debtor's cash flow problems are impacting its operations because certain subcontractors are starting to lien projects, further exacerbating the Debtor's cash flow situation. At this point, the Debtor has enough assets through its receivables that are due and owing by the City and its claims against the City, to work its way through its financial problems. However, the Debtor will have to restructure and reorganize its operations in order to regain its financial footing. Thus, the Debtor filed its Chapter 11 case on the Petition Date.

6.    <u>Local Rule 1007-4(a)(iii)</u>: Not applicable because the Debtor's case was not

3

originally commenced under Chapter 7 or 13.

7.    Local Rule 1007-4(a)(iv): Not applicable because no committee was organized prior to the Petition Date.

8.    Local Rule 1007-4(a)(v): Schedule 1 hereto lists the following information with respect to each of the holders of the Debtor's twenty (20) largest unsecured claims, excluding claims of insiders: the creditor's name, address (including the number, street, apartment or suite number, and zip code, if not included in the post office address), telephone number, the name(s) of persons(s) familiar with the Debtor's accounts if known, the amount of the claim, and an indication of whether the claim is contingent, unliquidated, disputed or partially secured.

9.    Local Rule 1007-4(a)(vi):  Schedule 2 hereto provides the following information with respect to each of the holders of the Debtor's five (5) largest secured claims: the creditor's name and address (including the number, street, apartment or suit number, and zip code, if not included in the post office address), the amount of the claim, a brief description of the claim, an estimate of the value of the collateral securing the claim, and whether the claim or lien is disputed.

10.    Local Rule 1007-4(a)(vii): Schedule 3 hereto is a summary of the Debtor's assets and liabilities.

11.    Local Rule 1007-4(a)(viii): Not applicable because none of the securities of the Debtor are publicly held.

12.    Local Rule 1007-4(a)(ix): Not applicable because none of the Debtor's property is in the possession or custody of any custodian, public officer, mortgagee, pledgee, assignee of rents or secured creditor, or agent for any such entity, including the name, address, telephone number of each such entity and the court in which any proceeding related thereto is pending.

4

13.    Local Rule 1007-4(a)(x):  Schedule 4 hereto provides a list of the premises owned, leased or held under other arrangement from which the Debtor operates its business.

14.    Local Rule 1007-4(a)(xi): Schedule 5 hereto provides the location of the Debtor's substantial assets, the location of its books and records, and the nature, location, and value of any assets held by the Debtor outside the territorial limits of the United States.

15.    Local Rule 1007-4(a)(xii): Not applicable because there are no actions or proceedings, pending or threatened, against the Debtor or its property where a judgment against the Debtor or a seizure of its property is imminent.

16.    Local Rule 1007-4(a)(xiii): Schedule 6 hereto provides a list of the names of the individuals who comprise the Debtor's existing senior management, their tenure with the Debtor, and a brief summary of their relevant responsibilities and experience.

17.    Local Rule 1007-4(a)(xiv): Schedule 7 hereto provides the estimated amount of weekly payroll to employees (exclusive of officers, directors, stockholders and partners) for the thirty (30) day period following the Petition Date.

18.    Local Rule 1007-4(a)(xv):  Schedule 8 hereto provides the amount proposed to be paid to officers and directors of the Debtor for the thirty (30) day period following the Petition Date.

19.    Local Rule 1007-4(a)(xvi):  Schedule 9 hereto provides a schedule of estimated cash receipts and disbursements, net cash gain or loss, obligations and receivables expected to accrue but remain unpaid, other than professional fees, and any other information relevant to an understanding of the foregoing for the thirty (30) day period following the Petition Date.

## II. SUMMARY OF FIRST DAY MOTIONS[1]

20.    To enable the Debtor to operate effectively and to minimize adverse effects from

its chapter 11 filing, the Debtor has requested or will be requesting various relief in "first day" motions (the "First Day Motions") filed with the Court and described below. In connection with preparing for this case, I have reviewed each of the First Day Motions referenced below. The First Day Motions were prepared with my input and assistance. I believe that the information contained in the First Day Motions is accurate and correct. As set forth more fully below, I believe that the entry of orders granting the relief requested in these motions is critical to the Debtor's ability to preserve the value of its estate and succeed in its reorganization efforts.

A.    *Debtor's Motion for Emergency Use of Cash Collateral and for Interim and Final Orders (1) Authorizing use of Cash Collateral, (2) Granting Replacement Liens as Adequate Protection to Pre-Petition Secured Lenders, (3) Scheduling Interim and Final Hearings on Cash Collateral and (4) Granting Related Relief*

22.    The Debtor has filed a motion seeking to use the cash collateral of M&T, 460 and Reveal on an emergency, interim and final basis. The Debtor's use of cash collateral is necessary to pay its usual and ordinarily operating expenses while the Debtor reorganizes its business operations. Absent the use of cash collateral to pay payroll, purchase materials and operate its business in general, the value of the Debtor's assets will be eradicated. The Debtor is seeking approval of emergency use of cash collateral in the amount of $426,965.00.

23.    As set forth in the Cash Collateral Motion, the Debtor seeks to grant Replacement Liens to M&T, 460 and Reveal in the Debtor's Post-Petition Collateral to the extent in the diminution of the value of such entities' collateral. To the extent such Post-Petition Collateral consists of the proceeds of the Debtor's construction contracts, the Replacement Liens shall be subordinate to the payment of all valid Article 3-A trust fund obligations with respect to such projects (or equivalent trust fund statutes for projects, if any, located outside the State of New York). In all events, the Replacement Liens shall be subordinate to the payment of U.S. Trustee

---

[1] Capitalized terms used but not defined in this section have the meanings given them in the relevant First Day Motion.

fees in the Debtor's case and a carve out for the Debtor's professionals of $50,000 per month

(the professional fee carve out is not sought in the order approving emergency relief). Moreover,

the Replacement Liens shall not extend to the recovery of funds or proceeds from the successful

prosecution of avoidance actions pursuant to Sections 502(d), 544, 545, 547, 548, 549, 550, or

553 of the Bankruptcy Code. As additional adequate protection for the use of Cash Collateral,

the Debtor proposes to pay M&T the monthly interest payment to which it is entitled under the

parties' loan documents, amounting to $17,568.55 per month.

24.     The Debtor requires the immediate use of Cash Collateral in order to avoid

immediate and irreparable harm to its business. Absent the ability to pay usual and normal

operating expenses, payroll, and purchase supplies, the value of the Debtor's business will be

irreparably harmed as the Debtor will be forced to default on its construction projects.

B.      *Debtor's Motion for Interim and Final Orders Pursuant to Bankruptcy Code Sections
        363 and 364 and Bankruptcy Rules 6003 and 6004 Authorizing Debtor to Maintain,
        Continue and Renew its Surety Bond Program*

25.     As set forth above, the Debtor's revenue is attributable to its municipal

customers including the New York City Department of Design and Construction, Parks

Department and Economic Development Corp. All of the Debtor's municipal customers require

that the Debtor furnish one or more surety bonds to secure the Debtor's payment or performance

obligations under the applicable construction contract. Consequently, in the ordinary course of

its business, the Debtor has arranged for Liberty Mutual Insurance Company, the Debtor's Surety,

to issue Surety Bonds on the Debtor's behalf for the benefit of its customers.

26.     As of the Petition Date, the Debtor has approximately 28 outstanding Surety

Bonds issued by the Surety. The penal sums of these bonds total approximately

$176,051,193. Premiums for the Debtor's Surety Bonds are determined annually and are

paid upon issuance. As of the Petition Date, the Debtor is current on all premium obligations owed to the Surety.

27.    None of the outstanding Surety Bonds are currently collateralized, although in the event of a default under any Surety Bond and performance by the Surety of the obligations thereunder, the Surety would then be subrogated to the right to receive payment under such bonded contract. That right to receive payment would be superior to any claim by the Debtor or any secured creditor of the Debtor.

28.    While the Surety Bonds shift the risk of the Debtor's non-payment or non-performance from the municipality to the Surety, a Surety Bond is not an insurance policy. Rather, if the Surety incurs a loss on the Surety Bond as a result of the Debtor's default on its underlying obligations, the Surety is entitled to recover the full amount of the loss from the Debtor and, to the extent of the outstanding accounts payable under the bonded contract, from the respective bond obligees, such as the municipalities with which the Debtor has bonded contracts. To maintain the Surety Bond Program, certain Indemnitors have executed Indemnity Agreements in favor of the Surety pursuant to which the Indemnitors agree to indemnify the Surety in the event the Surety is required to pay or perform under any of the Surety Bonds issued on behalf of the Debtor. In addition, among other terms, the Indemnity Agreements generally require that the Debtor, at the request of the Surety, pay to the Surety the amount of any loss reserves or post cash or other acceptable collateral to protect the Surety against actual or anticipated losses.

29.    Because of the importance of the Surety Bond Program, through this Motion, the Debtor is seeking to continue, maintain, and renew its Surety Bond Program as well as authorization to post cash and other acceptable collateral if required by the Surety in

connection with the renewal or issuance of Surety Bonds. Because the Debtor's business

depends on its municipal customers and because the municipal customers would not do

business with the Debtor if the Debtor does not maintain satisfactory Surety Bonds, such

relief is appropriate and in the interest of all parties.

30.     Additionally, in the motion the Debtor requests authorization, to the extent it

is unable to renew the Surety Bonds on an unsecured basis, to obtain the Surety Bonds on a

secured basis. Finally, while the Debtor intends to perform all of its customers contracts in

the ordinary course of business while its case is pending, to avoid potential disputes and

ensure that the Debtor's relationship with the Surety and its customers continue

uninterrupted, pursuant to the Motion, any claims asserted by the Surety for

indemnification under any Indemnity Agreement shall be treated as a postpetition claim to

the extent that the actual, potential or asserted liability of the Debtor to any beneficiary or

obligee under the Debtor's bonded contracts arises out of a postpetition breach of such

bonded contract. The Debtor's indemnification obligations under its prepetition Indemnity

Agreement arising out of a postpetition Surety Bond would also be deemed a postpetition

obligation of the Debtor.

C.     *Motion of the Debtor for Entry of an Order (I) Authorizing the Debtor to Pay Certain Prepetition Employee Obligations, Withholding Obligations and Employee Benefits, (II) Authorizing the Debtor to Continue Performing Under Collective Bargaining Agreements, (III) Directing Banks to Honor Related Prepetition Transfers, and (IV) Granting Related Relief*

32.     The Debtor has filed a motion seeking authority, in its discretion, to pay and/or honor

certain prepetition wage claims of Employees, all prepetition withholding obligations and payroll

taxes related to such wages, union benefits and certain prepetition employee benefit programs, and to

confirm performing under its union contracts. I believe that this relief is critical to the Debtor's

business and reorganization efforts.

33.    The Debtor's Employees are its most valuable asset.    The Debtor's success is dependent on its Employees who provide labor with respect to the Debtor's construction projects. The retention of the Employees, many of whom possess specialized skills, is essential to the Debtor's ability to effectively reorganize.

34.    If this motion were not granted, I believe that not only would the Employees suffer enormous personal hardship, but the Debtor's business would be immediately and irreparably harmed.    Without its Employees, the Debtor would be unable to maintain its operations and would therefore be unable to reorganize for the benefit of its creditors.

35.    In addition, the filing of a chapter 11 petition is a stressful and uncertain time for a debtor corporation and its employees.    I believe that honoring the pre-petition employee obligations described in the motion will minimize the hardship that the Employees would otherwise endure if payroll and benefit programs were interrupted and will prevent a rapid loss of Employees that otherwise may occur if the Employees lost their reasonable expectation of compensation for their services.    I believe that the continued payment of prepetition employee obligations is both critical and justified based on the importance of the Employees to the Debtor's operations.

D.    *Motion of the Debtor for Entry of Interim and Final Orders Pursuant to 11 U.S.C. § 366 (I) Deeming Utilities Adequately Assured of Future Performance, (II) Establishing Procedures for Determining Adequate Assurance of Payment, and (III) Prohibiting Utilities from Altering, Refusing or Discontinuing Service*

36.    In connection with the operation of its business, the Debtor regularly incurs expenses for gas, electricity, telephone and internet services provided by various Utility Providers.    To provide adequate assurance of payment for future services, the Debtor proposes to grant the Utility Providers a security deposit based on two weeks' worth of the average monthly billing, to be paid to the Utility Providers by the Debtor.

37.    I believe that the Proposed Adequate Assurance constitutes sufficient adequate assurance of payment under the circumstances and should be approved.  However, if the Utility Providers disagree with the Debtor's analysis, the Debtor has proposed the Adequate Assurance Procedures for the Utility Providers to request additional adequate assurance.  I believe that the Adequate Assurance Procedures will enable the parties to negotiate and, if necessary, seek Court intervention without jeopardizing the Debtor's chapter 11 case, while still protecting the rights of the Utility Providers.

38.    Should any Utility Provider refuse or discontinue service, even for a brief period of time, I believe that the Debtor's ability to preserve and maximize the value of its estate could be severely and irreparably harmed.  For these reasons, I believe that it is critical that the utility services continue uninterrupted and that the Utility Providers be prohibited from altering, refusing or discontinuing services on account of prepetition amounts outstanding or on account of any perceived inadequacy of the Debtor's proposed adequate assurance.

E.    *Motion of the Debtor for Entry of an Order Authorizing the Debtor to (I) Continue to Maintain Prepetition Insurance Policies, (II) Pay or Honor Prepetition Obligations Arising Thereunder and (III) Continue to Maintain and Perform Under Insurance Premium Finance Agreement*

39.    Prior to the Petition Date, in the ordinary course of the Debtor's business, the Debtor maintained insurance Policies providing coverage for general liability, automobile liability, excess liability and workers compensation.    The Debtor financed the premiums on its excess liability coverage policy with Bank Direct Capital Finance pursuant to a Commercial Insurance Premium Finance Agreement entered into in the ordinary course of business prior to the Petition Date.

40.    I am not presently aware of any unpaid premium obligations or payments under the Finance Agreement.  However, in recognition of the critical necessity of keeping its Policies in current effect, the Debtor is requesting authority to maintain its prepetition insurance Policies, pay or

honor related prepetition obligations outstanding on account of the Policies, if any, and continue to maintain and perform under the Finance Agreement in the ordinary course of business in accordance with past practice.

41.     I believe that it is essential that the Debtor maintain the Policies and the Finance Agreement and honor its obligations thereunder upon the terms agreed to prepetition because, if the Debtor is unable to continue making payments on the Policies, the insurance companies may not allow the Debtor to renew the Policies at the current rates in the future.  The Debtor would then be required to obtain replacement insurance on an expedited basis at greater cost to the estate.  Even if the insurance companies were not permitted to terminate the Policies, I believe that any interruption of payments would have severe adverse impacts on the Debtor's ability to extend current Policies or acquire new insurance coverage in the future.  I believe that this could have a devastating impact on the Debtor's ability to operate its business and, ultimately, upon the value of its assets.

42.     In addition, it is my understanding that the maintenance of appropriate insurance is required under the Bankruptcy Code and the U.S. Trustee Guidelines.  Accordingly, the Debtor requests authority to pay any amounts due and owing with respect to the Policies and the Finance Agreement and to otherwise continue the Policies and Finance Agreement.

F.     *Debtor's Application for an Order Extending Time for the Debtor to File Schedules of Assets and Liabilities and Statement of Financial Affairs*

43.     Finally, Debtor is also seeking an extension of its time to file its schedules of assets and liabilities and Statement of Financial Affairs.  The Debtor was faced with an immediate and urgent need to file this Chapter 11 case.  As such, an extraordinarily large burden was placed upon the Debtor's financial advisors and management in the immediate weeks preceding the Petition Date. In addition, it is likely that during the next several weeks, the Debtor will be inundated with attendant responsibilities and requests from its surety, lender and other parties in interest as it is

customary in any large bankruptcy case.

44.    Accordingly, the Debtor requests that it be afforded an additional thirty (30) day extension of time to file its schedules without prejudice to a further request for additional time should the same be necessary.

45.    In furtherance of the reorganization efforts, the Debtor respectfully requests that the orders granting the relief requested in the First Day Motions be entered.

TROCOM CONSTRUCTION CORP.

By: _____
     Joseph Trovato

Sworn to before me, this
___ day of May, 2015

_____
Notary Public

NANCY CHRYSTAL
Notary Public, State of New York
No. 01CH4834396
Qualified in Suffolk County
Commission Expires May 31, 20___

## Schedule 1

**20 Largest Unsecured Claims (Excluding Insiders)**

**SEE ATTACHED**

B4 (Official Form 4) (12/07)

## United States Bankruptcy Court
### Eastern District of New York

In re   Trocom Construction Corp.                              Case No. _____
                                          Debtor(s)            Chapter      11

## LIST OF CREDITORS HOLDING 20 LARGEST UNSECURED CLAIMS

Following is the list of the debtor's creditors holding the 20 largest unsecured claims. The list is prepared in accordance with Fed. R. Bankr. P. 1007(d) for filing in this chapter 11 [or chapter 9] case. The list does not include (1) persons who come within the definition of "insider" set forth in 11 U.S.C. § 101, or (2) secured creditors unless the value of the collateral is such that the unsecured deficiency places the creditor among the holders of the 20 largest unsecured claims. If a minor child is one of the creditors holding the 20 largest unsecured claims, state the child's initials and the name and address of the child's parent or guardian, such as "A.B., a minor child, by John Doe, guardian." Do not disclose the child's name. See 11 U.S.C. § 112; Fed. R. Bankr. P. 1007(m).

| (1) | (2) | (3) | (4) | (5) |
|---|---|---|---|---|
| Name of creditor and complete mailing address including zip code | Name, telephone number and complete mailing address, including zip code, of employee, agent, or department of creditor familiar with claim who may be contacted | Nature of claim (trade debt, bank loan, government contract, etc.) | Indicate if claim is contingent, unliquidated, disputed, or subject to setoff | Amount of claim [if secured, also state value of security] |
| Advanced Mill & Pave, Inc 214 Vincent Drive East Meadow, NY 11554 | Advanced Mill & Pave, Inc 214 Vincent Drive East Meadow, NY 11554 | Trade Debt | | 463,455.75 |
| Architectural Stone Source Inc. 150-28 Union Tpk Suite 105 Flushing, NY 11367 | Architectural Stone Source Inc. 150-28 Union Tpk Flushing, NY 11367 | Trade Debt | | 199,283.15 |
| Ash Tree Service, Inc. 175-20 Wexford Terra Suite 15D Jamaica Estates, NY 11432 | Ash Tree Service, Inc. 175-20 Wexford Terra Suite 15D Jamaica Estates, NY 11432 | Trade Debt | | 101,565.35 |
| Dawn Trucking Inc. 194-19 115th Avenue Saint Albans, NY 11412 | Dawn Trucking Inc. 194-19 115th Avenue Saint Albans, NY 11412 | Trade Debt | | 229,404.63 |
| Delta Environmental 71 Green Street Brooklyn, NY 11222 | Delta Environmental 71 Green Street Brooklyn, NY 11222 | Trade Debt | | 143,410.00 |
| Evergreen Recycling of Corona 127-50 Northern Boulevard Flushing, NY 11368 | Evergreen Recycling of Corona 127-50 Northern Boulevard Flushing, NY 11368 | Trade Debt | | 127,283.84 |
| Hammer & Steel, Inc. Po Box 66936 Saint Louis, MO 63166 | Hammer & Steel, Inc. Po Box 66936 Saint Louis, MO 63166 | Trade Debt | | 110,365.64 |
| Hayward Baker, Inc. 235 Fairfield Avenue West Caldwell, NJ 07006 | Hayward Baker, Inc. 235 Fairfield Avenue West Caldwell, NJ 07006 | Trade Debt | | 80,533.11 |
| Hylan DataCom Electrical 950 Holmdel Road Holmdel, NJ 07733 | Hylan DataCom Electrical 950 Holmdel Road Holmdel, NJ 07733 | Trade Debt | | 133,827.10 |
| In-City Enterprises Inc. 4459 Bronx Boulevard Bronx, NY 10470 | In-City Enterprises Inc. 4459 Bronx Boulevard Bronx, NY 10470 | Trade Debt | | 404,309.74 |

B4 (Official Form 4) (12/07) - Cont.

In re    **Trocom Construction Corp.**                                    Case No. _____

                    Debtor(s)

## LIST OF CREDITORS HOLDING 20 LARGEST UNSECURED CLAIMS
### (Continuation Sheet)

| (1) Name of creditor and complete mailing address including zip code | (2) Name, telephone number and complete mailing address, including zip code, of employee, agent, or department of creditor familiar with claim who may be contacted | (3) Nature of claim (trade debt, bank loan, government contract, etc.) | (4) Indicate if claim is contingent, unliquidated, disputed, or subject to setoff | (5) Amount of claim [if secured, also state value of security] |
|---|---|---|---|---|
| Local 1010 136-25 37th Avenue Suite 502 Flushing, NY 11354 | Local 1010 136-25 37th Avenue Suite 502 Flushing, NY 11354 | Amounts due Union | | 780,066.80 |
| Local 731 3411 35th Avenue Astoria, NY 11106 | Local 731 3411 35th Avenue Astoria, NY 11106 | Amounts due Union | | 780,794.00 |
| Metro Fab Pipe Inc. 15 Fairchild Court Plainview, NY 11803 | Metro Fab Pipe Inc. 15 Fairchild Court Plainview, NY 11803 | Trade Debt | | 341,606.00 |
| Newmark Engineering, P.C. 93 Union Street Montclair, NJ 07042 | Newmark Engineering, P.C. 93 Union Street Montclair, NJ 07042 | Trade Debt | | 180,220.00 |
| R and H Trucking, Inc. 743 Nostrand Avenue Uniondale, NY 11553 | R and H Trucking, Inc. 743 Nostrand Avenue Uniondale, NY 11553 | Trade Debt | | 142,626.35 |
| Soil Solutions Inc. 110 Cherry Valley Avenue West Hempstead, NY 11552 | Soil Solutions Inc. 110 Cherry Valley Avenue West Hempstead, NY 11552 | Trade Debt | | 388,769.48 |
| T. Mina Supply Inc. 126-53 36th Avenue Flushing, NY 11368 | T. Mina Supply Inc. 126-53 36th Avenue Flushing, NY 11368 | Trade Debt | | 1,275,519.40 |
| The Fenceman Inc. Po Box 561 Commack, NY 11725 | The Fenceman Inc. Po Box 561 Commack, NY 11725 | Trade Debt | | 100,347.13 |
| W & W Glass, LLC 302 Airport Executive Pk. Nanuet, NY 10954-5285 | W & W Glass, LLC 302 Airport Executive Pk. Nanuet, NY 10954-5285 | Trade Debt | | 78,628.45 |
| Windsor Electrical Contracting, Inc. 95-01 Brisbin Street Jamaica, NY 11435 | Windsor Electrical Contracting, Inc. 95-01 Brisbin Street Jamaica, NY 11435 | Trade Debt | | 489,039.98 |

## DECLARATION UNDER PENALTY OF PERJURY
## ON BEHALF OF A CORPORATION OR PARTNERSHIP

I, the President of the corporation named as the debtor in this case, declare under penalty of perjury that I have read the foregoing list and that it is true and correct to the best of my information and belief.

Date _____ *5-7-15* _____                Signature _____

                                         Joseph Trovato
                                         President

*Penalty for making a false statement or concealing property:* Fine of up to $500,000 or imprisonment for up to 5 years or both.
18 U.S.C. §§ 152 and 3571.

**Schedule 2**

**5 Largest Secured Claims**

| Creditor | Amount of Claim | Description of Claim | Value of Collateral Securing Claim | Lien or Claim Disputed (Y/N) |
|---|---|---|---|---|
| M&T Bank One M&T Plaza, Buffalo, New York 14203 Attn: Office of the General Counsel | $6,277,598 as of 12/31/14 | Amounts due under Revolving Credit Loan | Unknown | N |
| 460 Kingsland Avenue Real Estate LLC 460 Kingsland Avenue Brooklyn, New York 11222 | $250,000 | Amounts due under Revolving Credit Loan | Unknown | N |
| Reveal Kingsland LLC 460 Kingsland Avenue Brooklyn, New York 11222 | $250,000 | Amounts due under Revolving Credit Loan | Unknown | N |

## <u>Schedule 3</u>

### Summary of Debtor's Assets and Liabilities

Pursuant to Local Bankruptcy Rule 1007-4(a)(vii), the following unaudited financial information is the latest available information and reflects the Debtor's financial condition as of December 31, 2014.

<u>Total Assets</u>:     $22,210,909

<u>Total Liabilities</u>:     $17,658,383

## Schedule 4

**Premises Owned or Leased**

| Address of Property | Owned or Leased |
|---|---|
| 4627 54th Road, Flushing, New York 11378 | Leased Office |
| 3323 Merritt Avenue, Suite 101, Bronx, New York 10475 | Leased Field Office |
| 242-07 Northern Boulevard, 2nd Floor, Douglaston, New York 11362 | Leased Field Office |
| 195 Front Street, Room 308, New York, New York 10038 | Leased Field Office |
| 1323 Myrtle Avenue, Ground Floor, Brooklyn, New York 11221 | Leased Field Office |
| 460 W. 126th Street, Basement, New York, New York 10027 | Leased Field Office |
| 369 E. 149th Street, 7th Floor, Bronx, New York 10455 | Leased Field Office |
| 213-02 42nd Avenue, Bayside, New York 11361 | Leased Field Office |
| 55-59 Chrystie Street, Suite 210, New York, New York 10002 | Leased Field Office |
| 725 W. 175 Street, New York, New York 10033 | Leased Field Office |

## Schedule 5

### Location of Debtor's Significant Assets, Books and Records and Assets Outside of U.S.

| Asset | Location | Value (if Outside U.S.) |
|---|---|---|
| Books and Records | 4627 54th Road, Flushing, New York | N/A |
| Equipment and Inventory | 3323 Merritt Avenue, Suite 101, Bronx, New York 10475 | Unknown |
| | 242-07 Northern Boulevard, 2nd Floor, Douglaston, New York 11362 | |
| | 195 Front Street, Room 308, New York, New York 10038 | |
| | 1323 Myrtle Avenue, Ground Floor, Brooklyn, New York 11221 | |
| | 460 W. 126th Street, Basement, New York, New York 10027 | |
| | 369 E. 149th Street, 7th Floor, Bronx, New York 10455 | |
| | 213-02 42nd Avenue, Bayside, New York 11361 | |
| | 55-59 Chrystie Street, Suite 210, New York, New York 10002 | |
| | 725 W. 175 Street, New York, New York 10033 | |

## Schedule 6

### Senior Management

| Name | Title | Tenure | Experience/Responsibilities |
|------|-------|--------|----------------------------|
| Joseph Trovato | President | 1999 - present | Mr. Trovato manages all aspects of the business and is responsible for financial and vendor-related matters. |
| Anthony Santoro | Vice President | 1984-present | Field Supervisor |

## Schedule 7

### Estimated Weekly Payroll

Pursuant to Local Rule 1007-4(a)(xiv), the estimated amount of gross weekly payroll to employees (exclusive of officers, directors, stockholders and partners) for the thirty (30) day period following the Petition Date is approximately $1,205,125 per week.

## Schedule 8

### Proposed Payments to Officers and Directors

Pursuant to Local Rule 1007-4(a)(xv), the proposed amount to be paid to officers and directors of the Debtor for the thirty (30) day period following the Petition Date is approximately $44,875.

## Schedule 9

### Cash Receipts and Disbursements, Net Cash
### Gain or Loss, Unpaid Obligations and Receivables

Pursuant to Local Bankruptcy Rule 1007-4(a)(xvi), the following provides the estimated aggregated cash receipts and disbursements, net cash gain or loss, and obligations and receivables expected to accrue that remain unpaid (other than professional fees) for the 30-day period following the Petition Date.

| | |
|---|---|
| **Cash Receipts** | $2,689,863.76 |
| **Cash Disbursements** | $2,723,840.56 |
| **Net Cash Gain (Loss)** | $(33,976.80) |
| **Unpaid Obligations (excluding professional fees)** | $To be supplied |
| **Unpaid Receivables (excluding professional fees)** | $ To be supplied |