CULLEN & DYKMAN LLP
100 Quentin Roosevelt Boulevard
Garden City, NY11530
(516) 357-3700
C. Nathan Dee, Esq.
Matthew G. Roseman, Esq.
Bonnie L. Pollack, Esq.

Proposed Counsel for Trocom Construction Corp.

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK

---------------------------------------------------------------x

| | |
|---|---|
| In re: | : Chapter 11 |
| TROCOM CONSTRUCTION CORP., | : Case No. |
| Debtor. | : |

---------------------------------------------------------------x

**DEBTOR'S MOTION FOR EMERGENCY USE OF CASH COLLATERAL AND FOR INTERIM AND FINAL ORDERS (1) AUTHORIZING USE OF CASH COLLATERAL, (2) GRANTING ADEQUATE PROTECTION TO PRE-PETITION SECURED LENDERS, (3) SCHEDULING INTERIM AND FINAL HEARINGS ON THE USE OF CASH COLLATERAL AND (4) GRANTING RELATED RELIEF**

Pursuant to Sections 105, 361 and 363 of Title 11 of the United States Code (the "Bankruptcy Code") and Federal Rules of Bankruptcy Procedure 2002, 4001, and 9014 (the "Bankruptcy Rules"), Trocom Construction Corp. (the "Debtor"), the above-captioned debtor and debtor-in-possession, hereby moves this Court for emergency use of cash collateral pending the entry of interim and final orders authorizing the use of cash (the "Cash Collateral") in which M&T Bank ("M&T), 460 Kingsland Avenue Real Estate LLC ("460") and Reveal Kingsland LLC ("Reveal") have an interest. The Debtor requires the immediate use of Cash Collateral in order to pay certain operating expenses and maintain the value of its business. Specifically, the Debtor requests:

(i) entry of an Order substantially in the form attached hereto as Exhibit A authorizing the emergency use of $426,965 of Cash Collateral in accordance with the schedule ("Schedule") attached hereto as Exhibit B in order to avoid immediate and irreparable harm to the Debtor's estate;

(ii) entry of interim and final Orders authorizing use of Cash Collateral in the ordinary course of business and granting M&T, 460 and Reveal replacement liens to secure any diminution in the value of the secured creditors' collateral; and

(iii) the scheduling of interim and final hearings with respect to the relief requested herein.

The Debtor's use of the Cash Collateral is necessary to pay its usual and ordinary operating expenses while the Debtor reorganizes its business operations. Absent the use of the Cash Collateral to pay the expenses in the Schedule and budget annexed as Exhibit C (the "Budget"), the Debtor will be unable to operate and the value of the Debtor's assets will be eradicated. The payment of the expenses in the Schedule and Budget will therefore benefit the holders of liens on the Debtor's assets in particular, and the Debtor's other creditors in general, by preserving the value of the Debtor's estate. In further support of this motion, the Debtor states as follows:

## I. JURISDICTION AND VENUE

1. The Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding under 28 U.S.C. §§ 157(b). Venue is proper before the Court under 28 U.S.C. §§ 1408 and 1409.

## II. FACTUAL BACKGROUND

### A. General

2. On May 7, 2015 (the "Petition Date"), the Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Eastern District of New York (the "Court").

3. The Debtor continues to operate as a debtor-in-possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code.

4. The Office of the United States Trustee has not yet appointed an Official Committee of Unsecured Creditors.

**B. The Debtor's Business and Background**

5. In support of this Motion, the Debtor relies upon and incorporates by reference the affidavit of Joseph Trovato (the "Trovato Affidavit"), the Debtor's president, filed under Local Rule 1007-4 in support of the Debtor's voluntary petition. A detailed factual background of the Debtor's business and operations, as well as the events leading to the filing of this chapter 11 case, is more fully set forth in the Trovato Affidavit.

6. The Debtor is in the heavy construction business. Its primary customer is the City of New York through its various agencies. In particular, the Debtor works with the Department of Design and Construction, the Parks Department and the Economic Development Corp. regarding the replacement of water mains, sewers, retaining walls and refurbishment of parks. The Debtor is presently providing services on eighteen (18) ongoing construction projects throughout the New York Metropolitan area.

7. In connection with those projects, the Debtor's total receivables from the City agencies is estimated to amount to $11,339,038.00 as of December 31, 2014. In addition, the Debtor has filed or will soon be filing notices of claim against the City seeking the payment of more than $19 million in connection with certain prior construction projects.

8. The Debtor has been experiencing severe cash flow issues primarily because of losses on certain projects and the City's failure to timely pay amounts due and owing to the Debtor. The Debtor's cash flow problems are impacting its operations because certain subcontractors are starting to lien projects, further exacerbating the Debtor's cash flow situation. At this point, the Debtor has enough assets through its receivables that are due and owing by the City and its claims

against the City to work its way through its financial problems. However, the Debtor will have to restructure and reorganize its operations in order to gain its financial footing.

### C. Secured Claims Against the Debtor

9. The Debtor has a Line of Credit with M&T in the original principal amount of $10 million. The Debtor has drawn down the Line of Credit, and there is due and owing to M&T as a result thereof, the amount of $6,277,598 as of December 31, 2014. The M&T credit line is secured by a blanket lien in all of the Debtor's assets and is guaranteed by various members and affiliates of the Trovato family.

10. Because of the Debtor's severe cash flow issues discussed above, prior to the Debtor's filing, it was necessary for the Debtor to obtain loans from certain of its related entities in order to continue providing services on its ongoing construction projects and to operate. Thus, the Debtor obtained the sum of $250,000 from 460, secured by a blanket lien against the Debtor's assets subordinate to M&T, and a $250,000 loan from Reveal, also secured by a blanket lien against the Debtor's assets subordinate to M&T.

## I. REQUESTED USE OF CASH COLLATERAL AND OFFER OF ADEQUATE PROTECTION

### A. Use of Cash Collateral

11. The Debtor requires the immediate use of the Cash Collateral in order to avoid immediate and irreparable harm to its business. Absent the emergency use of the Cash Collateral to purchase supplies needed for the construction jobs and pay the usual and ordinary operating expenses of the business, the value of the Debtor's business will be irreparably harmed because the Debtor will be in default on its construction projects. Additionally, the Debtor requires the use of Cash Collateral in order to meet its weekly payroll as further set forth in the Schedule and Budget.

The immediate use of the Cash Collateral is therefore necessary to preserve the value of property of the Debtor's bankruptcy estate.

12. The Debtor therefore requests the immediate authority to utilize Cash Collateral in the amount of $426,965.00 to pay the actual expenses incurred in accordance with the Schedule. Cash Collateral which may be utilized to pay such expenses includes the cash infused by 460 and Reveal, and the Debtor's receivables from the City agencies, provided, however, that the proceeds of the Debtor's construction contracts shall first be used to pay any and all trust fund obligations against such monies in accordance with Article 3-A of the New York State Lien Law (or equivalent trust fund statutes for projects, if any, located outside the State of New York). The Debtor requests the use of Cash Collateral as set forth on the Schedule through the date of the interim hearing on the instant Motion and pursuant to the Budget through the date of the final hearing to fund the operation of its business to the extent necessary to avoid immediate and irreparable harm to the Debtor's business.

13. Approval of the use of the Cash Collateral on the terms identified in this Motion is in the best interests of the Debtor, the Debtor's estate and its creditors. The use of the Cash Collateral will enable the Debtor to operate, pay post-petition obligations including payroll, and pay vendors in order to preserve the value of its business. Absent the use of the Cash Collateral, the Debtor would be required to cease operations. The Debtor would also suffer a loss of employee morale during a critical period of the Debtor's bankruptcy case.

14. It remains the Debtor's desire to obtain the consent of the secured lenders to the use of Cash Collateral prior to the interim hearing. However, pending a consensual arrangement, the Debtor seeks Court approval to use the Cash Collateral in accordance with the Schedule and/or the Budget.

**B. Adequate Protection**

15. Section 363(e) of the Code provides that a party with an interest in property proposed to be used, sold or leased by the debtor may receive adequate protection of such interest before a debtor may use, sell or lease such property. 11 U.S.C. § 363(e). The Debtor proposes to provide adequate protection to M&T, 460 and Reveal through the granting of post-petition liens (the "Replacement Liens") on post-petition collateral (the "Post-Petition Collateral") in exchange for use of the Cash Collateral, to the extent of the diminution in the value of such entities' collateral. To the extent such Post-Petition Collateral consists of the proceeds of the Debtor's construction contracts, the Replacement Liens shall be subordinate to the payment of all valid Article 3-A trust fund obligations with respect to such projects (or equivalent trust fund statutes for projects, if any, located outside the State of New York). In all events, the Replacement Liens shall be to subordinate to the payment of U.S. Trustee fees in the Debtor's case and a carve out for the Debtor's professionals of $50,000.00 per month (this professional fee carve out is not included in the Schedule, only the Budget, and therefore is not included in the proposed order authorizing emergency use of the cash collateral). Moreover, the Replacement Liens shall not extend to the recovery of funds or proceeds from the successful prosecution of avoidance actions pursuant to Sections 502(d), 544, 545, 547, 548, 549, 550, or 553 of the Bankruptcy Code.

16. As additional adequate protection for the use of Cash Collateral, the Debtor proposes to pay M&T the monthly interest payment to which it is entitled under the parties' loan documents, amounting to $17,568.55 per month.

17. Section 361 of the Code provides that when adequate protection is required under Section 363 of the Code, such adequate protection may be provided by, *inter alia*, "providing to

such entity an additional or replacement lien to the extent that such stay, use, sale, lease, or grant results in a decrease in the value of such entity's interest in such property." 11 U.S.C. § 361(2).

18. What constitutes adequate protection varies with the facts and circumstances of each particular case. Bankruptcy courts are vested with discretion to determine the form of protection that best reflects the spirit and intent of Section 361. *See In re Bramham*, 38 B.R. 459, 466 (Bankr. D. Nev. 1984); *In re Lackow Brothers, Inc.*, 10 B.R. 717, 720 (Bankr. S.D. Fla. 1981); *In re Family Investments, Inc.*, 8 B.R. 572 (Bankr. W.D. Ky. 1981). Regardless of its form, the entitlement to and measure of the protection required is always determined by the extent of the anticipated or actual decrease, if any, in the value of the secured creditor's collateral during course of the bankruptcy case. *See In re First South Savings Assoc.*, 820 F.2d 700, 710 (5th Cir.1987).

19. Adequate protection requires only that the value of the creditor's interest in the cash collateral be protected from diminution while the Debtor uses the cash collateral. *United Savings Association of Texas v. Timbers of Inwood Forest Assoc., Ltd.*, 484 U.S. 365 (1988). Said another way, it is "intended by the Bankruptcy Code only to assure that a secured creditor, during the pendency of a bankruptcy case, does not suffer a loss in the value of its interest in property of the bankruptcy estate." *In re Markos Gurnee Partnership*, 252 B.R. 712, 716 (Bankr. N.D. Ill. 1997).

20. As set forth above, as adequate protection the Debtor proposes to grant M&T, 460 and Reveal Replacement Liens in the Post-Petition Collateral to the extent they held liens against such types of collateral as of the Petition Date (the "Pre-Petition Collateral"). The Replacement Liens shall maintain the same priority, validity and enforceability as the lenders' respective pre-petition liens. The Replacement Liens shall be recognized only to the extent of the diminution in value of the lenders' Pre-Petition Collateral after the Petition Date resulting from the Debtor's use of the Cash Collateral. To the extent such Post-Petition Collateral consists of the proceeds of the

Debtor's construction contracts, the Post-Petition Liens shall be subordinate to the payment of all valid Article 3-A trust fund obligations with respect to such projects (or equivalent trust fund statutes for projects, if any, located outside the State of New York). In all events, the Post-Petition Liens shall be to subordinate to the payment of U.S. Trustee fees in the Debtor's case and a carve out for the Debtor's professionals of $50,000.00 per month (this professional fee carve out is not included in the Schedule, only the Budget, and therefore is not included in the proposed order authorizing emergency use of the cash collateral). Moreover, the Replacement Liens shall not extend to the recovery of funds or proceeds from the successful prosecution of avoidance actions pursuant to Sections 502(d), 544, 545, 547, 548, 549, 550, or 553 of the Bankruptcy Code.

21. The value of M&T, 460 and Reveal's secured positions will be adequately protected during the Debtor's use of Cash Collateral by the preservation of the value of the Debtor's assets and the issuance of the Replacement Liens as set forth above, as well as payment of monthly interest to M&T. *Accord In re Kain,* 86 B.R. 506, 513 (Bankr. W.D. Mich. 1998).

**C. <u>Interim Approval of Use of Cash Collateral Should be Granted</u>**

22. Bankruptcy Rule 4001 provides, among other things, that a final hearing on the Debtor's request to use Cash Collateral may not be commenced earlier than 14 days after the service of the Motion. However, the Court may conduct a preliminary expedited hearing on the Motion upon request by the Debtor and authorize the use of Cash Collateral to the extent necessary to avoid immediate and irreparable harm to the Debtor's estate.

23. The Debtor requests that the Court schedule and conduct a preliminary hearing on the Motion and authorize the Debtor to utilize Cash Collateral in the amounts set forth in the Budget during the period after the entry of the interim order until the final hearing on the Motion.

24. Pursuant to the Motion, the Debtor therefore seeks authority to use Cash Collateral on an emergency basis in accordance with the Schedule and on an interim and final basis substantially in accordance with the Budget and terms of this Motion. For the foregoing reasons, the Debtor's proposed use of Cash Collateral is warranted.

25. No prior request for the relief requested in this Motion has been made by the Debtor in this Court or any other Court.

## IV. NOTICE

24. Notice of this Motion has been provided by facsimile, electronic mail, overnight delivery, or hand delivery to: (i) the Office of the United States Trustee, (ii) the Debtor's 20 largest unsecured creditors, (iii) M&T, 460 and Reveal, (iv) the Debtor's surety and (v) all parties who have filed a notice of appearance and request for notices in this proceeding. The Debtor submits that such notice is good and sufficient notice of the relief requested herein under the circumstances.

25. The Debtor further request that the Court schedule the interim and final hearing on the Motion and authorize the Debtor to mail copies of the signed order, which fixes the time, date and manner for filing objections to the Motion, the foregoing parties and counsel to any committee appointed in this case. The Debtor requests that the Court consider such notice of the interim and final hearings as good and sufficient notice under Bankruptcy Rule 4001 and Local Rule 2002.

**WHEREFORE**, the Debtor respectfully requests that this Court enter an Order:

A. Approving the notice of this Motion as described above; and

B. Authorizing the Debtor to use Cash Collateral on an emergency basis during the period from the entry of the Order attached hereto as Exhibit A, and on a continuing basis during the interim period from entry date of the interim order granting use of Cash Collateral through and including the date of the hearing on a final order granting the Debtor continued use of Cash Collateral;

C. Granting adequate protection to M&T, 460 and Reveal in accordance with the terms of this Motion;

D. Scheduling interim and final hearings on the Debtor's Motion; and

E. Granting such other relief as is just and proper.

Dated: Garden City, New York
May 7, 2015

CULLEN AND DYKMAN LLP

BY: s/ ______________________________
C. Nathan Dee, Esq.
Matthew G. Roseman, Esq.
Bonnie L. Pollack, Esq.
100 Quentin Roosevelt Boulevard
Garden City, New York 11530
(516) 357-3700

Proposed Attorneys for Trocom Construction Corp.

# EXHIBIT A

CULLEN & DYKMAN LLP
100 Quentin Roosevelt Boulevard
Garden City, NY11530
(516) 357-3700
C. Nathan Dee, Esq.
Matthew G. Roseman, Esq.
Bonnie L. Pollack, Esq.

Proposed Counsel for Trocom Construction Corp.

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| TROCOM CONSTRUCTION CORP., | : | Case No. |
| Debtor. | : | |

**ORDER PURSUANT TO SECTIONS 105(a), 361 AND 363 OF THE BANKRUPTCY CODE AUTHORIZING THE EMERGENCY USE OF CASH COLLATERAL**

Upon the motion of Trocom Construction Corp., Debtor and Debtor-in-Possession (the "Debtor") dated May 7, 2015 (the "Motion") for an interim and final Orders pursuant to sections 105(a), 361 and 363 of Title 11 of the United States Code (the "Bankruptcy Code") authorizing the Debtor to utilize Cash Collateral and provide adequate protection to M&T Bank ("M&T"), 460 Kingsland Avenue Real Estate LLC ("460") and Reveal Kingsland LLC ("Reveal") by granting replacement liens on certain post-petition collateral to M&T, 460 and Reveal, and by interest payments to M&T, and

**IT APPEARING**, that on May 7, 2015 (the "Petition Date"), the Debtor filed a voluntary petition for relief pursuant to Chapter 11 of the Bankruptcy Code with the United States

Bankruptcy Court for the Eastern District of New York, and the Debtor has continued in the management and possession of its business and property as Debtor-in-Possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code; and

**IT FURTHER APPEARING,** that the relief requested herein is essential for the continued operation of the Debtor's business; and

**IT FURTHER APPEARING,** that the M&T, 460 and Reveal have asserted perfected liens on all of the Debtor's assets ("the Cash Collateral"); and

**IT FURTHER APPEARING,** that the Debtor has given notice of the hearing on this Order to the Debtor's twenty largest unsecured creditors, M&T, 460, Reveal, the Debtor's surety, the Office of the United States Trustee, and all parties having filed a request for service of pleadings and notice of appearance (collectively the "Notice Parties"), and a hearing thereon having been held by this Court on May ___, 2015; and

**IT FURTHER APPEARING,** that sufficient and adequate notice of this hearing has been give pursuant to Section 363 of the Bankruptcy Code and Federal Rule of Bankruptcy Procedure 2002 and 4001(b); and

**IT FURTHER APPEARING,** that good, adequate, and sufficient cause has been shown to justify the granting of the relief requested herein, and upon the record of the hearings held by this Court, and good and sufficient cause having been shown for entry of this Order,

**NOW, THEREFORE,** upon the Motion and the record of the proceedings heretofore held before this Court with respect to the Motion, it is hereby

**ORDERED**, that as adequate protection for the use of Cash Collateral by the Debtor and to the extent of such use, M&T, 460 and Reveal are hereby granted valid and perfected liens and

security interests in the same collateral that secured their indebtedness prior to the Petition Date, that is acquired by the Debtor after the Petition Date, in the same priority as existed as of the Petition Date ("Replacement Liens"), and M&T shall also receive monthly interest payments in the amount of $17,568.55; and it is further

**ORDERED**, To the extent such post-petition collateral consists of the proceeds of the Debtor's construction contracts, the Replacement Liens shall be subordinate to the payment of all valid Article 3-A trust fund obligations with respect to such projects (or equivalent trust fund statutes for projects, if any, located outside of the State of New York). In all events, the Replacement Liens shall be to subordinate to the payment of U.S. Trustee fees in the Debtor's case; and it is further

**ORDERED**, that the Replacement Liens shall not extend to the recovery of funds or proceeds from the successful prosecution of avoidance actions pursuant to Sections 502(d), 544, 545, 547, 548, 549, 550, or 553 of the Bankruptcy Code; and it is further

**ORDERED,** that the Replacement Liens granted under this Order will be effective and continuing without the necessary of the execution, filing, or recordation of a mortgage, security interest, pledge agreement or financing agreement of any kind; and it is further

**ORDERED,** that the interim hearing on the Motion will take place on _____________, 2015 at ___ _.m. before the Honorable __________________, at the United States Bankruptcy Court, Eastern District of New York, 271 Cadman Plaza East, Brooklyn, New York, Brooklyn, New York 11201; and it is further

**ORDERED**, that the final hearing on the Motion will take place on ________________, 2015 at ___ __.m. before the Honorable __________________, at the United States Bankruptcy

Court, Eastern District of New York, 271 Cadman Plaza East, Brooklyn, New York, Brooklyn, New York 11201; and it is further

**ORDERED**, that objections, if any, to the relief sought in the Motion shall be served upon and received by the Court and by counsel for the Debtor on or before _______________, 2015 at 4:00 p.m.

EXHIBIT B

# Week of May 7th to May 17th 2015

| | | | | |
|---|---|---|---|---|
| **Opening cash balance 05/06/15** | | | | $593,538.00 |
| **Cash Receipts** | | | | |
| JOB #74 Retaining Wall | | | | $ 16,600.00 |
| Trovato Family Trust | | | | $ 220,000.00 |
| | | | | $ 830,138.00 |
| **Payroll & Union Benefits** | | | | |
| **EST. PAYROLL & TAXES 1-WK** | $ | 150,000.00 | | |
| **Payroll Taxes Prior Week** | $ | 45,000.00 | | |
| | | | $ 195,000.00 | |
| **Bank Loans & Equipment** | | | | |
| Chase Bank -- 2010 CADILLAC CTS | $ | 2,440.00 | | |
| BANK SERVICES | $ | 1,200.00 | | |
| BOBCAT | $ | 1,500.00 | | |
| ALLY (MONTHLY) | $ | 800.00 | | |
| NISSAN (MO) | $ | 600.00 | | |
| | | | $ 6,540.00 | |
| **Insurance/Payroll Payments** | | | | |
| SARSEP | $ | 800.00 | | |
| BENEFIT MALL/ COMPUPAY | $ | 1,650.00 | | |
| | | | $ 2,450.00 | |

# Week of May 7th to May 17th 2015

| Office/Field/Misc. | | | | |
|---|---|---|---|---|
| BP GAS | $ | 8,000.00 | | |
| CAPITAL ONE VISA | $ | 20,000.00 | | |
| HOME DEPOT | $ | 5,000.00 | | |
| VERIZON WIRELESS | $ | 3,800.00 | | |
| VERIZON (APX MO) | $ | 4,000.00 | | |
| WB MASON | $ | 825.00 | | |
| TELETRAC (2 MO) | $ | 3,500.00 | | |
| CON ED (APX MO) | $ | 2,300.00 | | |
| POLAND SP (APX MO) | $ | 200.00 | | |
| DELAGE LANDEN | $ | 1,900.00 | | |
| CASSONE | $ | 400.00 | | |
| CIT (Copiers) | $ | 2,000.00 | | |
| CALL A HEAD (MO) | $ | 2,200.00 | | |
| PITNEY BOWES (MO) | $ | 200.00 | | |
| DEER PARK (APX MO) | $ | 50.00 | | |
| NESTLE PURE (APX MO) | $ | 50.00 | | |
| FED EX | $ | 550.00 | | |
| | | | $ 54,975.00 | |

| JOB # | SUBS / VENDORS PMT | | | |
|---|---|---|---|---|
| | SUBS / VENDORS | $168,000.00 | | |
| | | | $168,000.00 | |
| | | $ 426,965.00 | | $ 426,965.00 |

| Ending Cash Balance as of 05/17/15 | $ 403,173.00 |
|---|---|

# EXHIBIT C

TO BE PROVIDED